**Michael W. JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57474.**

Court of Criminal Appeals of Texas, Panel No. 2.

May 16, 1979.

Rehearing Denied Jan. 23, 1980.

Gerald M. Brown, Temple, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Belton, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated rape. V.T.C.A. Penal Code, Sec. 21.03. Punishment was assessed by the jury at 40 years.

Appellant initially challenges the sufficiency of the evidence.

The record reflects that on April 8, 1976, at about 3:00 a. m., N———— G————, the prosecutrix, stopped to help the appellant after his car had become stuck on the shoulder of a highway. According to the prosecutrix, the appellant waved his arms to get her to stop and then asked for a ride to a telephone. She agreed to give him a ride to a nearby grocery store.

The prosecutrix testified that as they approached the store the appellant put a knife to her throat and told her to drive the other way. She complied with this demand. Appellant then instructed her to drive to a nearby lake. Once there, she was ordered to get out of the car and take her clothes off.

Prosecutrix related that she and the appellant went to some nearby bushes. Appellant again drew the knife and told her to disrobe. When she complied, the appellant put the knife away and then forced her to have oral sex with him. The prosecutrix stated that appellant next had intercourse with her and then attempted anal intercourse.

As the prosecutrix gathered her clothes to return to the car some change fell from her coat pocket. This change was found the next day by investigating officers. After they returned to the car, he again had intercourse with her.

As daylight approached, appellant took the prosecutrix into Temple, driving by a house belonging to a friend of his. They did not stop, but instead went to another rural location, finally getting stuck on an unpaved, secondary road. According to the prosecutrix, appellant forced her to walk to a cave, where she again performed oral sex and had intercourse with the appellant.

While in the cave, the appellant dozed off for a short time. The victim stated that since the appellant was lying on her clothes she did not attempt to escape at this time. She contemplated striking the appellant with a rock, but was reluctant to do so for fear that she would not incapacitate him.

They left the cave and walked for some distance. During this walk the prosecutrix

told the appellant she could not go any further. The appellant then began choking her. He finally relented, and again forced her to perform oral sex on him.

While continuing to walk appellant and the prosecutrix came upon a hunter, Bob Stippick. Appellant and Stippick were prior acquaintances. Stippick helped to push the prosecutrix's car from the mud, and later gave appellant and prosecutrix a ride when the car ran out of gas.

Stippick testified that the prosecutrix made no outcry in his presence. She testified that no outcry was made because of her belief that Stippick was a friend of the appellant's. She further testified that the threesome went to a grocery store, but again she was afraid to seek help as the only other person present was the female proprietor of the store. The prosecutrix was let out of Stippick's truck near her home. She immediately reported the events to her parents, and a short time later to police.

Dr. James Helgeson testified regarding the examination of the prosecutrix. He stated that he found bruises and abrasions on her body and sperm in the victim's vagina.

Appellant testified in his defense. He admitted having intercourse with the victim, but claimed that the acts were consensual. He denied attempting anal intercourse or having oral sex with the victim. According to the appellant, the victim picked him up, took him to a phone, and then drove him into the country.

Appellant contends that the evidence was insufficient to prove the required aggravating circumstances. Appellant maintains that the display of the knife was shown to be for purposes other than to compel her *submission to intercourse.*

In *Rogers v. State,* 575 S.W.2d 555, this Court reviewed previous decisions regarding the sufficiency of the evidence to prove the aggravating circumstances in a rape case. The Court found that when there was a showing that "a gun or knife was used, or a threat to kill the victim was made, or serious bodily injury was inflicted, or a combination of two or more of these factors," the evidence was sufficient to support a conviction under Sec. 21.03, *supra.* 575 S.W.2d at 559.

More recently in *Orosco v. State,* 590 S.W.2d 121 (1979), this Court was faced with a question very similar to the present case. In *Orosco,* the defendant had displayed a knife to the prosecutrix when he gained entry to her house. The knife was not seen again by the victim, nor was it displayed when the defendant later raped the victim. The Court found that "even after this weapon was out of sight, the threat of its use continued."

In the present case, the evidence shows that a knife was used and that the threat of its use continued throughout the episode. We find the evidence sufficient to support the finding of an imminent threat of death or serious bodily injury under Sec. 21.03, *supra.*

The evidence is sufficient to support the conviction.

■■■ Appellant contends that the jury charge was fundamentally defective in that it permitted a conviction of aggravated rape without first finding that he compelled submission by threat of death or serious bodily injury. Appellant points to the language contained in Paragraph 5 of the jury charge in support of this contention.

The indictment, omitting the formal parts, alleged:

". . . did then and there knowingly and intentionally by force and threats have sexual intercourse with N_____ J_____ G_____, a female not his wife, and did then and there intentionally and knowingly compel N_____ J_____ G_____ to submit to such act of sexual *intercourse by threatening imminent infliction of death or serious bodily injury* to N_____ J_____ G_____."

The court's charge to the jury first abstractly set out the applicable law and defined sexual intercourse, serious bodily injury, and the requisite mental states of intentionally and knowingly. In applying

the law to the facts, the court charged as follows:

"4. The indictment in this case having alleged the use of force and threats by the defendant, and the threat of infliction of serious bodily injury or death upon the alleged victim, before you would be warranted in convicting the defendant, you must find from the evidence beyond a reasonable doubt that defendant used such force on the occasion in question, if any, as to overcome such earnest resistance as might reasonably be expected under the circumstances at the time and, that any threat the defendant is alleged to have made in accomplishing the sexual intercourse, if any, was such that it would prevent resistance by a woman of ordinary resolution; that defendant, in the course of the same criminal episode as the alleged rape, compelled submission to the rape, if any, by threat of death or serious bodily injury to be imminently inflicted on anyone, and that there was penetration of the sexual organ of the female by the male organ of the party accused. If you have a reasonable doubt as to any of these matters, you must find the defendant not guilty.

"5. Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Michael W. Jackson, on or about the 8th day of April, 1976, in the County of Bell, and State of Texas, as alleged in the indictment, did then and there intentionally and knowingly by force, that overcame such earnest resistance as might reasonably have been expected under the circumstances, compel N_____ J_____ G_____, a female not his wife, to submit to sexual intercourse without her consent, or the said Michael W. Jackson did then and there intentionally or knowingly by threats, that would prevent resistance by a woman of ordinary resolution, compel N_____ J_____ G_____, a female not his wife, to submit to sexual intercourse without her consent, you will find the defendant guilty of the offense of aggravated rape and so say by your verdict, but if you do not so believe,

or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty' but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of aggravated rape and proceed to consider whether the defendant is guilty of the lesser included offense of rape.

"6. If you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant committed the offense of rape, as herein defined, but you further find from the evidence, or you have a reasonable doubt thereof, that defendant did not in the same criminal episode, if any, compel submission to the rape by threat of death or serious bodily injury, then you cannot convict the defendant of aggravated rape but you must find him guilty of the lesser offense of rape.

"If you have a reasonable doubt as to whether defendant is guilty of any offense herein defined, you will find the defendant not guilty."

Appellant is correct in his assertion that Paragraph 5 did not include any language charging that a threat of death or serious bodily injury is a requisite to this verdict of guilty for aggravated rape.

A court's charge is fundamentally defective if it authorizes conviction on a finding of less than all the requisite elements of the offense. E. g., *West v. State,* Tex.Cr.App., 567 S.W.2d 515. Such a charge is erroneous because it authorizes a conviction upon a showing of less than all the requisite elements of the offense, not just because the charge contains erroneous language. *See Robinson v. State,* Tex.Cr.App., 553 S.W.2d 371, and compare *Smith v. State,* Tex.Cr. App., 541 S.W.2d 831.

In the present case, the charge erroneously instructed the jury to find the appellant guilty of aggravated rape without first finding that he threatened death or serious bodily injury. In the next paragraph, however, the charge directed the jury to acquit the appellant of aggravated rape if it did

not find that he threatened death or serious bodily injury.

When the charge is read in its entirety, it does not authorize a finding of guilt for aggravated rape unless the jury also finds that the appellant threatened death or serious bodily injury. Thus, the charge is not fundamentally defective.

■ Appellant finally contends that the trial court erred in charging that the appellant could be found guilty of aggravated rape if the jury found that he "did, in the same criminal episode, compel submission to the rape by threat of death or serious bodily injury." Appellant contends that the inclusion of the language "in the same criminal episode" and the court's failure to qualify the threat of death or serious bodily injury with "imminent" renders the charge fundamentally defective. Again, no objection was made to the trial court's charge.

The court's charge, as set out above, is erroneous for the reasons stated by the appellant. The failure to object to these errors limits our review to fundamental error, however.

A jury charge is fundamentally defective when it:

(1) authorizes conviction without proof of an allegation in the indictment which is required to be proved;

(2) authorizes conviction on a different theory than alleged in the indictment;

(3) authorizes conviction on the theory alleged in the indictment and on additional unalleged theories;

(4) authorizes conviction for conduct which is not an offense.

See, Cumbie v. State, 579 S.W.2d 732 (1979), and cases cited therein.

The language in Paragraph 4 qualified the threat of death or serious bodily injury as one "to be imminently inflicted." The deletion of this qualification in Paragraph 6 does not render the charge fundamentally defective. The charge does not authorize conviction if the jury has a reasonable doubt as to the existence of any of the "matters" in Paragraph 4.

Further, the language "in the same criminal episode" was never included in such a way as to relieve the State of its burden to prove that submission was compelled by threat of death or serious bodily injury to be imminently inflicted.

Neither of these two errors in the charge authorized a conviction in one of the four fundamentally defective manners as set out above. The charge in the present case, although leaving much to be desired, is not fundamentally defective.

The judgment is affirmed.

## OPINION ON COURT'S MOTION FOR REHEARING

DOUGLAS, Judge.

The Court on its own motion set this cause for rehearing to determine if there was fundamental error in the court's charge.

The opinion on original submission properly decided the case by construing the charge as a whole. In view of the dissent, more will be written.

The dissenters would reverse on the ground that the court did not require the jury to find beyond a reasonable doubt that appellant threatened imminent infliction of death or serious bodily injury as alleged in the indictment before finding him guilty of the offense of aggravated rape.

The first paragraph of the court's charge reads:

"A person commits aggravated rape if he commits rape as defined above and he compels the submission to the rape by threat of death or serious bodily injury to be imminently inflicted on anyone."

The fourth paragraph of the charge is set out in full in the original opinion. It consists of one sentence. In part it reads:

". . . you must find from the evidence beyond a reasonable doubt that defendant used such force on the occasion in question, if any, as to overcome such earnest resistance as might reasonably be expected under the circumstances at the time and, that any threat the defendant

is alleged to have made in accomplishing the sexual intercourse, if any, was such that it would prevent resistance by a woman of ordinary resolution; that defendant, in the course of the same criminal episode as the alleged rape, compelled submission to the rape, if any, by threat of death or serious bodily injury *to be imminently inflicted* on anyone, and that there was penetration of the sexual organ of the female by the male organ of the party accused. If you have reasonable doubt as to any of these matters, you must find the defendant not guilty." (Emphasis supplied)

Paragraph five required the jury to believe beyond a reasonable doubt that Jackson "as alleged in the indictment" did "intentionally and knowingly by force * * compel _____, a female not his wife to submit to sexual intercourse. . . ."

Paragraph six of the charge instructed the jury that if it had a reasonable doubt that Jackson "committed the offense of rape as defined herein" not to convict him of aggravated rape.

Rape, as defined in the court's charge, required the jury to find rape by threat of death or serious bodily injury to be immediately inflicted.

The form of verdict which the jury used is as follows:

"We, the jury, find the defendant, Michael W. Jackson, guilty of aggravated rape, as alleged in the indictment."

The indictment alleged that Jackson forced the prosecutrix to submit to such acts of sexual intercourse by threatening imminent infliction of death or serious bodily injury.

█ In *Daniel v. State*, 486 S.W.2d 944 (Tex.Cr.App.1972), this Court held:

"The charge should be viewed as a whole, and review should not be limited to parts of the charge standing alone. *Cain v. State,* 154 Tex.Cr.R. 284, 226 S.W.2d 640 (Tex.Cr.App.1950)."

The *Daniel* case is correct, and it will be followed. See *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978); *Slagle v. State*, 570 S.W.2d 916 (Tex.Cr.App.1978); *Pittman v. State*, 554 S.W.2d 190 (Tex.Cr.App.1977), which holds that the charge must be read as a whole and the review thereof must not be limited to a small part standing alone. In Texas Digest, ☞822(1), over 150 cases are listed which hold that the charge must be viewed as a whole.

The motion for rehearing is denied.

ROBERTS, Judge, dissenting.

Like Janus, the Court today sets its face in opposite directions at once. In this case the Court holds that we must review the charge as a whole, not limiting our view to the part that applies the law to the facts. In *Plunkett v. State*, 591 S.W.2d 907 (Tex.Cr.App. No. 55,078), also decided this date, the Court ignores errors in the charge as a whole, limiting its review to the part that applies the law to the facts. I can synthesize only one rule that reconciles these cases: In the face of plain error in a charge, the Court will adopt whichever approach leads to the result it desires.

I cannot understand why the Court takes comfort from reading the *Jackson* charge as a whole, for the more paragraphs one reads, the more errors he will find. The crucial paragraph 5 omits the aggravation element. Not to worry, says the Court, for that element can be found in paragraphs 1 ard 4. Of course, paragraph 4 itself contains an erroneous charge on "same criminal episode."[1] But these errors are somehow cured in the context of paragraph 6, which gets both the "same criminal episode" element and the aggravation element wrong.[2]

The Court's theory of juries, then, must be that they read all the paragraphs of the

---

1. The element of "same criminal episode" appears in V.T.C.A., Penal Code, Sec. 21.03(a)(1), not in Sec. 21.03(a)(2) which was involved in this case.

2. Paragraph 6 repeated the immaterial language about "same criminal. episode" and failed to require a finding that the threat was of harm "to be imminently inflicted."

charge, picking a bit from this paragraph and a bit from that, to assemble the law. (Never mind that the Court assumes that the jury can distinguish right bits from wrong.) But if that is how a jury acts, then *Plunkett* must be wrongly decided, for it operates on a theory that juries read only one paragraph of a charge, ignoring the charge as a whole.

*Plunkett* is essentially the obverse of *Jackson*; it had a correct application of the law to the facts, but defective abstract instructions and a defective defensive charge. Plunkett was indicted for intentionally and knowingly causing a death; V.T.C.A., Penal Code, Section 19.02(a)(1). The definition of murder was erroneously expanded to include causing death by committing an act clearly dangerous to human life with the intent to cause serious bodily injury; V.T. C.A., Penal Code, Section 19.02(a)(2). The jury was instructed that a person could be found guilty on either theory. The error was compounded by the prosecutor's argument that the erroneous theory "applies in this case." The theory of defense was, no intent to murder. The error was plainly "calculated to injure the rights of defendant"; V.A.C.C.P., Article 36.19. Only by refusing to read the charge as a whole could the jury have remained free from this error. But we know from *Jackson* that juries read the charge as a whole.

The Court necessarily is holding that a jury of laymen will know when a charge has no correct paragraphs (as in *Jackson*) so that it can assemble a correct instruction piecemeal, and that it will know when a charge has only one correct paragraph (as in *Plunkett*) among several incorrect ones. And it will read the charge as a whole in the former case, and ignore the charge as a whole in the latter case. If a jury could do these things there would be no need for charges on the law and we would not have to invent inconsistent reasons for affirming cases. But they cannot do the former and we should not do the latter. I dissent.

ODOM, PHILLIPS and CLINTON, JJ., join in this opinion.