Fernando FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–361–CR.

Court of Appeals of Texas,
Waco.

May 23, 2001.

Rehearing Overruled June 27, 2001.

John M. Hurley, Waco, for appellant.

John Segrest, McLennan County Dist. Atty., James Wiley, Asst. McLennan County Dist. Atty., for Appellee.

## OPINION

VANCE, Justice.

Fernando Flores was charged by a two-count indictment with murder of a child and injury to a child. A jury convicted him of criminally negligent homicide, a lesser-included offense of murder, and of injury to a child. Flores was sentenced to two years' confinement for criminally negligent homicide and forty-five years' confinement for injury to a child. On appeal, he complains that: 1) the jury charge on criminally negligent homicide was defective, 2) the trial court erred in allowing hearsay testimony over his objection, and 3) the evidence was legally and factually insufficient to support his conviction of injury to a child.

We will reverse Flores's conviction for criminally negligent homicide based on charge error. However, because we overrule his remaining issues, we will affirm Flores's conviction of injury to a child.

## THE EVIDENCE

At trial, the State presented eye-witness and medical testimony to establish that Flores caused blunt-force injuries to his girlfriend's son, Jay, who was then twenty-three months old. Flores was taking care of Jay and Jay's five year old sister Gayla while their mother was at work. The State claimed that Flores first injured Jay by striking him in the mid-section on or about December 18, 1997. The State further contended that on or about December 23, Flores injured Jay again by striking him in the mid-section which caused a new injury that resulted in the child's death.

The State called Gayla, who testified that she saw Flores punch Jay in the stomach with his fist four times. While doing this, Flores taunted Jay by stating, "[N]a-na na-na na-na, your momma is not home." Medical testimony from the State's witnesses indicated that the first injury caused a portion of Jay's bowel to die. The State's medical evidence also suggested that there was a subsequent injury which caused Jay's death.

Flores did not testify. The State offered his video-taped and written statements, in which he said that he was roughhousing or playing football with the children when he unintentionally fell on Jay with his elbow to Jay's mid-section. Flores's statements suggested that Jay's multiple bruises and contusions were the result of an inept attempt to administer CPR. Flores called a medical examiner who reviewed Jay's hospital charts and autopsy report. The expert testified that there was but one injury and that Flores's

explanation of what occurred was consistent with Jay's injuries.

## DISCUSSION

The issues are whether: 1) the jury charge on criminally negligent homicide was defective, 2) the trial court erred in allowing hearsay testimony, and 3) the evidence is legally and factually insufficient to support his conviction of injury to a child.

### 1. Jury charge

■ Flores complains that the trial court erred by submitting a jury charge that was fundamentally defective because it authorized a conviction of criminally negligent homicide without proof of all the requisite elements of the offense. When reviewing a complaint of charge error, we must first determine whether error actually exists in the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Garcia v. State*, 32 S.W.3d 328, 332 (Tex. App.—San Antonio 2000, no pet.).

■ In determining whether charge-error exists, we view the charge as a whole rather than isolated statements or parts of the charge standing alone. *Holley v. State*, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989); *Washington v. State*, 930 S.W.2d 695, 698 (Tex.App.—El Paso 1996, no pet.). If we find charge-error, then we determine whether sufficient harm resulted from the error to require reversal. *Almanza*, 686 S.W.2d at 171.

The application paragraph of the jury charge reads as follows:

Count 1

Criminally Negligent Homicide

Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of December, 1997, in McLennan County, Texas the defendant, Fernando Flores, did, with crimi-

nal negligence, as that term has been herein defined, cause the death of [Jay] by striking [Jay]; *or did with criminal negligence cause blunt force injuries to [Jay] in a manner and means to the grand jury unknown,* then you will find the defendant guilty of the lesser included offense of Criminally Negligent Homicide.

(Emphasis added).

A person commits criminally negligent homicide "if he causes the death of an individual by criminal negligence." TEX. PEN.CODE ANN. § 19.05(a) (Vernon 1994). Flores argues the underlined portion of the court's application paragraph was defective because it omitted the phrase, "which caused the death of Jay," or words to that effect.[1] As a result, Flores claims the jury could have convicted him of criminally negligent homicide without finding an essential element of the offense. We agree.

■ A jury charge is fundamentally defective when it:

(1) authorizes conviction without proof of all the requisite elements of the offense;

(2) authorizes conviction on a different theory than alleged in the indictment;

(3) authorizes conviction on the theory alleged in the indictment and on additional unalleged theories; or

(4) authorizes conviction for conduct which is not an offense.

*Cumbie v. State,* 578 S.W.2d 732, 733–34 (Tex.Crim.App.1979)[2]; *see also U.S. v. Gaudin,* 515 U.S. 506, 522–23, 115 S.Ct. 2310, 2320, 132 L.E.2d 444 (1995) (The Constitution gives a criminal defendant the right to have the jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.).

Here, the charge authorized a conviction of criminally negligent homicide without proof of all the requisite elements of the offense.[3] *Jackson v. State,* 591 S.W.2d 820, 823–24 (Tex.Crim.App.1979). We must now determine whether sufficient harm resulted from the error to require reversal. *Almanza,* 686 S.W.2d at 171.

■ One of two standards apply when determining whether sufficient harm resulting from charge error requires reversal. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994). When there has been a timely objection made at trial, an appellate court will ask whether there was "some harm." *Id.* In contrast, when the error is urged for the first time on appeal, a reviewing court will ask whether the defendant suffered "egregious harm." *Almanza,* 686 S.W.2d at 171.

■ Flores did not object to the charge error at trial, and therefore we must determine whether the error egregiously harmed him. *Id.* Errors that result in egregious harm are those which affect the very basis of the case, deprive

---

**1.** Thus, the charge does not require the jury to determine that the "blunt force injuries" caused Jay's death.

**2.** *Cumbie* has been overruled to the extent it held that "fundamental" charge error required automatic reversal. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). The *Cumbie* categories of charge error, however, remain intact although not every error will require reversal under *Almanza. Frost v.*

State, 25 S.W.3d 395, 399 n. 6 (Tex.App.— Austin 2000, no pet.).

**3.** Some adjustment in these four standards may be required when the indictment is deficient, but unchallenged. *See* TEX.CODE CRIM. PROC.ANN. art. 1.14(b) (Vernon Supp.2001). Here, the indictment alleged that Flores caused Jay's death, which is also a necessary element of the lesser-included offense of criminally negligent homicide.

the defendant of a valuable right, or vitally affect a defensive theory. *Loredo v. State,* 32 S.W.3d 348, 353 (Tex.App.—Waco 2000, pet. ref'd) (citing *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996)).

 The United States Supreme Court has recently stated that "The Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 467, 120 S.Ct. 2348, 2350, 147 L.Ed.2d 435 (2000). As a result, Flores was entitled to a jury determination on every element of criminally negligent homicide, beyond a reasonable doubt. Here, because of the "or" in the underlined portion of the charge and because of the omission of the phrase "which caused the death of Jay" or words to that effect, the jury could have convicted Flores of criminally negligent homicide without finding that he caused Jay's death, an element of the offense. *Jackson,* 591 S.W.2d at 823–24. We find that this deprived Flores of a valuable right and he therefore suffered egregious harm. *Apprendi,* 530 U.S. at 467, 120 S.Ct. at 2350; *Almanza,* 686 S.W.2d at 171. Flores's conviction of criminally negligent homicide must be reversed and the cause remanded for a new trial on this count.

### 2. *Hearsay*

 Flores contends the trial court erred in allowing hearsay testimony over his objection. As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990) (op. on reh'g). A re-viewing court should not reverse a ruling which was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 101–02.

The State called Jay's sister, Gayla. On direct examination, Gayla testified to a conversation she had had with Detective Kristina Woodruff.

Q. Do you remember talking to [Woodruff] after [Jay] died?

A. No.

Q. You don't remember talking to her and telling her what you saw and what happened?

A. No.

Q. Gayla, did you tell [Woodruff] that when [Flores] hurt [Jay] he said, na-na na-na na-na, your momma is not home?

A. No.

Q. Have you ever heard him say that?

A. Yes.

Q. You have heard [Flores] say that?

A. Yes.

Q. When did [Flores] say that?

A. Sunday.

Q. Sunday, the day that he hit him?

A. Yes.

Flores did not object to Gayla's testimony. Later the State called Woodruff and asked the following:

STATE: Specifically, did [Gayla] tell you anything along the lines of "na-na-na-na-na-na, your momma isn't here", at the time that she says Fernando Flores was hitting him, "[Jay]."

DEFENSE: Object to any hearsay.

COURT: Sustained

STATE: Judge, this is a prior inconsistent statement that the child has made. We are offering it for that purpose.

DEFENSE: I don't believe it is appropriate to set your witness up and knock them down and impeach your own witness.

STATE: Judge, I think that rule has been amended. The voucher rule is no longer in effect. I believe that even the party calling a witness can now impeach them under the rules of evidence.

COURT: Overrule the objection.

STATE: Did she, in fact, tell you that?

WITNESS: Yes. She would sing that song. She sang it several times. Then she indicated to me that he was singing this song as he was striking [Jay] in the stomach.

 Flores claims the trial court erred in overruling his objection to Woodruff's testimony because it was hearsay. Woodruff's testimony that Gayla said she had heard Flores singing a song while he struck Jay in the stomach is an out of court statement and is therefore hearsay. TEX.R.EVID. 801(d).

 The State argues the evidence was admissible to impeach Gayla's prior inconsistent statements. In the absence of an applicable hearsay exception, an inconsistent statement may be used to impeach the witness's credibility but cannot be used as primary evidence to prove guilt. *Ramirez v. State*, 987 S.W.2d 938, 944 (Tex. App.—Austin 1999, no pet.). However, Rule 613 of the Rules of Evidence directs that before a witness may be impeached she must be informed of the statement's content, the time and place at which it was made, and the person to whom it was uttered. TEX.R.EVID. 613(a); *McGary v. State*, 750 S.W.2d 782, 786 (Tex.Crim.App. 1988). If the witness unequivocally admits having made such statement, extrinsic evidence of the same shall not be admitted. *Id.*

Gayla's testimony was inconsistent only with regard to speaking to Woodruff earlier and telling her what had happened. The complete predicate for impeachment was not laid by the State while Gayla was testifying. *Id.* Thus, extraneous evidence was not admissible to impeach her. *Id.*

Furthermore, Gayla's testimony was not inconsistent in having heard Flores say, "na-na na-na na-na, your momma is not home" as he struck Jay. And, whether Gayla had spoken to Woodruff earlier was not relevant, because it did not make the existence of a fact of consequence to the determination of whether Flores struck Jay more or less probable. TEX.R.EVID. 401. If the evidence was relevant, its probative value was substantially outweighed by its prejudicial effect. *Id.* 403.

We find that Woodruff's testimony of what Gayla said Flores said as he struck Jay was not admissible to impeach Gayla's prior inconsistent statements that she had not spoken earlier to Woodruff. Accordingly, the trial court erred in admitting such testimony and we must determine whether Flores was harmed by this error. *Montgomery*, 810 S.W.2d at 391.

 The trial court's error in admitting this evidence is a non-constitutional error; therefore, we must determine whether Flores's "substantial rights" were affected by the erroneous ruling. TEX. R.APP.P. 44.2(b); *Horton v. State*, 986 S.W.2d 297, 303 (Tex.App.—Waco 1999, no pet.). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In analyzing harm under Rule 44.2(b):

[W]e review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that

the error affected the defendant's rights in such as way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Horton,* 986 S.W.2d at 303; *Fowler v. State,* 958 S.W.2d 853, 866 (Tex.App.— Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex. Crim.App.1999).

In analyzing the weight a jury would probably have placed on the error, we look at the other evidence of Flores's guilt. *Hughes v. State,* 12 S.W.3d 166, 168 (Tex.App.—Fort Worth 2000, no pet.). At trial, the State presented eye-witness and medical testimony to establish that Flores caused blunt-force injuries to Jay. The State called Gayla, who testified that she saw Flores punch Jay in the stomach with his fist four times. While doing this, Flores taunted Jay by stating, "[N]a-na na-na na-na, your momma is not home." Medical testimony from the State's witnesses indicated that Jay's injuries caused his death. The State also offered Flores's video-taped and written statements, in which he said that he was roughhousing with the children when he unintentionally fell on Jay with his elbow to Jay's mid-section. Flores called a medical examiner who testified that Flores's explanation of what occurred was consistent with Jay's injuries.

After reviewing the entire record, we cannot say that Woodruff's testimony about Gayla's statement had a substantial and injurious effect or influence on the jury's verdict. *Id.* Because there was compelling evidence, other than the improper impeachment testimony, that the jury could have considered in reaching its determination of Flores's guilt, we conclude that the error did not affect his substantial rights. TEX.R.APP.P. 44.2(b).

### 3. *Legal and factual sufficiency*

Flores contends the evidence is legally and factually insufficient to sustain his conviction for injury to a child. Flores claims a rational trier of fact could not have found the essential elements of the offense to convict him beyond a reasonable doubt. Furthermore, Flores argues the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

#### a. *Legal sufficiency*

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000).

Flores was charged with injury to a child. Penal Code section 22 .04 provides that a person commits the offense if he intentionally or knowingly causes serious bodily injury to a child. TEX.PEN.CODE ANN. § 22.04(a)(1) (Vernon Supp.2001).

At trial, the State presented eye-witness and medical testimony to establish that Flores caused blunt-force injuries to Jay. The State called Jay's sister, Gayla, who testified that she saw Flores punch Jay in the stomach with his fist four times. While doing this, Flores taunted Jay by stating, "[N]a-na na-na na-na, your momma is not home."

The State called Dr. Michael Craun, the Medical Director of Trauma Services, and Dr. Edwin Morrison, the Director of the Pathology Laboratory, both at Hillcrest Baptist Medical Center in Waco. Craun treated Jay when he was brought to the

emergency room, and Morrison examined a section of Jay's small intestine after his death. The State also called Dr. Lynn Salzberger, the medical examiner who performed the autopsy on Jay. All three doctors found that Jay's injuries were consistent with someone striking him in the stomach with his fist. Salzberger concluded that Jay died as a result of multiple blunt force injuries.

In summary, the jury heard testimony that Flores taunted Jay while he repeatedly punched him in the stomach with his fist. The jury also heard extensive medical testimony that such punches were consistent with the fatal injuries that caused Jay's death. We find that, based on this evidence, a rational trier of fact could have found the essential elements of injury to a child beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Johnson*, 23 S.W.3d at 7; *Guzman v. State*, 20 S.W.3d 237, 240 (Tex.App.—Dallas 2000, pet. granted).

### b. Factual sufficiency

 In contrast, in reviewing a challenge to the factual sufficiency of the evidence, we must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Perkins v. State*, 19 S.W.3d 854, 855 (Tex.App.—Waco 2000, pet. ref'd). Considering all of the evidence, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the [fact finder's] determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson*, 23 S.W.3d at 11.

In this case, the jury heard conflicting evidence. Although Flores did not testify, the State offered a video-taped and written statement by Flores in which he said that he was roughhousing or playing football with the children, when he unintentionally fell on Jay with his elbow to Jay's midsection. Flores's written statement is as follows:

> My name is Fernando Flores. It was a day Jessica was at work. Me, Gayla and [Jay] was playing around in their room, I remember I had the football and I was on my knees and I was telling them to tackle me and at the same time they ran toward me I try to do a small rush to just gently to knock them down and [Jay] fell on his back side in front of me, and Gayla was trying to knock me down as she pushed me I fell to the side [Jay] was on half of my body fell on him at that time my arms was on top of him that when I thought I was hurting him then I got off of him.

In addition, Flores suggested that Jay's multiple bruises and contusions were the result of his inept attempt to administer CPR to the child. Flores also called a medical examiner who reviewed Jay's hospital charts and autopsy report. The expert testified that there was but one injury to Jay and that Flores's explanation of what occurred was consistent with Jay's injuries.

In contrast, the State put on eye-witness testimony that Flores repeatedly punched Jay in the stomach with his fist. The State also put on medical testimony from three doctors who had treated the victim. All three had viewed Flores's video-taped statement of what had occurred. Each doctor concluded that Jay's injuries were not likely received during play as described by Flores, but were instead consistent with punches from an adult.

 The jury is the sole judge of the facts, the witnesses' credibility, and the weight to be given to the evidence. *Tuck-*

er v. State, 15 S.W.3d 229, 234–35 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing Clewis, 922 S.W.2d at 135). Accordingly, the jury may choose to believe or not to believe any portion of the witnesses' testimony. Id. at 235. Reconciliation of conflicting testimony is within the jury's province. Id.

After examining all of the evidence neutrally, giving due deference to the jury, we conclude that the verdict is not so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 7.

## CONCLUSION

We reverse Flores's conviction of criminally negligent homicide based on charge error. However, because we overrule his remaining two issues, his conviction for injury to a child is affirmed. The judgment is affirmed in part, reversed in part, and the cause is remanded to the trial court for further proceedings.

GRAY, Justice, dissenting.

### COURT'S CHARGE

The majority fails to consider the entirety of the charge as required by Jackson v. State, 591 S.W.2d 820, 825 (Tex.Crim. 1979). In Jackson, the Court on its own motion for rehearing restated well-settled law that:

In Daniel v. State, 486 S.W.2d 944 (Tex. Cr.App.1972), this Court held:

"The charge should be viewed as a whole, and review should not be limited to parts of the charge standing alone. Cain v. State, 154 Tex.Cr.R. 284, 226 S.W.2d 640 (Tex.Cr.App.1950)."

Jackson, 591 S.W.2d at 825. The Court reviewed the law section of the charge as well as additional portions of the application paragraph and determined, consider-

ing the charge as a whole, there was no error.

In the charge in this case, the jury was instructed that "a person commits criminally negligent homicide if he causes the death of an individual by criminal negligence." (Clerk's Record, page 91). The charge then proceeds to define criminal negligence. This instruction was on the page immediately preceding the portion of the charge alleged to have erroneously omitted the required finding under an alternative manner and means that "blunt force injury" caused Jay's death. The application paragraph that immediately followed the paragraph complained of stated:

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of the lesser included offense of Criminally Negligent Homicide.

(Clerk's Record page 92).

After careful consideration of the entire charge, I do not believe that the jury could have answered "We, the jury, find the defendant, Fernando Flores, guilty of the lesser included offense of Criminally Negligent Homicide" without finding that the conduct of Flores, under either theory alleged in the indictment and charged to the jury, caused the death of Jay. Thus, even though the charge was less than perfect, the charge was not fundamentally defective because, considered as a whole, it required the jury to find all the elements of criminally negligent homicide beyond a reasonable doubt or find the defendant not guilty. The disposition of this issue is controlled by applying Jackson.

### HEARSAY OBJECTION

The State asked police officer Woodruff: "Specifically, did she [Gayla] tell you anything along the lines of 'na-na-na-na-na-na, your momma isn't here,' at the time that

she says Fernando Flores was hitting him [Jay] ... [?]" Flores objected that the question called for hearsay. The State responded that it was being offered as a prior inconsistent statement. Flores argued that the State could not impeach its own witness. The State accurately responded that the voucher rule had been amended and that the party calling a witness can now impeach the witness under the current rules of evidence. TEX.R.EVID. 607; *Hughes v. State,* 4 S.W.3d 1, 5 (Tex. Crim.App.1999).

Flores did not object to an incomplete predicate for the admission of impeachment testimony, nor did he request a limiting instruction, nor did he object that the prejudicial effect of the statement outweighed the probative value, if any, of impeaching Gayla with having made the statement to Woodruff but also having denied making the statement to Woodruff. Accordingly, Flores' only objection, hearsay, was fully addressed by the State's offer of the evidence for the limited purpose of impeaching Gayla and for no other purpose.

### CONCLUSION

Because the majority holds otherwise on the two issues presented, I respectfully dissent.