Opinion issued June 28, 2007










 





 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00211-CR






PATRICK LOYLE BALDREE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1020549






O P I N I O N


 Appellant, Patrick Baldree, was charged by indictment with the offense of
burglary of a habitation, (1) enhanced by two prior felony convictions. Appellant
pleaded not guilty to the primary offense, but pleaded "true" to the enhancements. 
A jury found appellant guilty as charged in the primary offense, found the
enhancement paragraphs true, and assessed punishment at 38 years' confinement. 

 In four issues, appellant contends that the trial court erred by (1) excluding the
testimony of his expert on eyewitness identification; (2)-(3) precluding appellant
from impeaching certain witnesses with prior inconsistent statements; and (4)
sustaining the State's hearsay objections during a pretrial hearing, to which the Texas
Rules of Evidence do not apply.

 We affirm. 

Summary of Facts and Procedural History

 On the evening of March 7, 2005, complainant Phillip Abbott and his wife,
Sherri Abbott, arrived at their Kingwood home to find the inside lights on and an
unfamiliar white truck parked out front. As Mr. Abbott parked in his driveway, he
noticed that the lower portion of his front door was missing. As Mr. Abbott stepped
out of his car, a man emerged through the hole in the bottom of the door and began
to run. Mr. Abbott was unsure whether the man was running at him or to the white
truck. Mr. Abbott focused on the man's facial features, trying to ascertain the man's
intentions. The man ran past Mr. Abbott, passing three to four feet away, and got into
the white truck. The truck failed to start immediately, which afforded Mr. Abbott the
opportunity to write down the truck's license number. Inside the home, the Abbotts
found their bedroom in disarray and a ring missing.

 Houston Police Officer M. Zientek traced the truck's license number to
appellant. Officer Zientek assembled a photo array containing appellant's image,
presented the array to Mr. Abbott, and read Mr. Abbott an admonition that a suspect
might or might not be included in the array. Within seconds, Mr. Abbott positively
identified appellant as the man he saw running from the Abbott home on the night of
the incident. Mrs. Abbott did not to view the array.

 At a pre-trial hearing, appellant challenged the admissibility of the array,
contending that it was impermissibly suggestive. Mr. Abbott testified concerning the
incident at his home, the subsequent presentation of the array, and his identification
of appellant. Officer Zientek testified concerning the procedures used to assemble
and present the array. The trial court ruled that the array was not impermissibly
suggestive.

 At trial, Mr. Abbott again identified appellant as the perpetrator. Appellant's
defense was that Mr. Abbott has misidentified him. Appellant contended that his
roommate had actually committed the burglary, using appellant's truck. 

 Additionally, evidence was presented at trial that Officer Zientek recovered
pawn shop receipts from appellant's truck. One of the receipts, which bore
appellant's signature, was traced to a watch stolen from a home in the Abbott's
neighborhood a week prior to the invasion of the Abbott's home. 

Exclusion of Expert Witness

 In his first issue, appellant contends that the trial court erred by excluding the
testimony of his expert on eyewitness identification. 

A. Standard of Review and Governing Principles of Law

 A trial court's determination of a witness's qualifications as an expert and its
decision to exclude expert testimony are reviewed for an abuse of discretion.
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). If the trial court's
ruling lies within the zone of reasonable disagreement, the trial court's ruling will be
upheld. Id.

 Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific,
technical, or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, training, or education may testify thereto in the form of an opinion
or otherwise." Tex. R. Evid. 702. The proponent of expert testimony must show by
clear and convincing proof that the evidence he seeks to introduce is sufficiently (1)
relevant and (2) reliable to assist the trier of fact in accurately understanding other
evidence or in determining a fact at issue. Weatherred, 15 S.W.3d at 542. 

 1. Relevance

 The standard for relevance is whether the scientific principles "will assist the
trier of fact" and are "sufficiently tied" to the pertinent facts of the case. Jordan v.
State, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). The expert must make an effort
to tie pertinent facts of the case to the scientific principles that are the subject of his
testimony. Id.

 2. Reliability

 Expert witness testimony in the field of psychology pertaining to the reliability
of eyewitness identification of a suspect from a photographic lineup is a "soft
science." (2) In the field of "soft sciences," the proponent of the evidence must show
that (1) the field of expertise involved is legitimate; (2) the subject matter of the
expert's testimony is within the scope of that field, and (3) the expert's testimony
properly relies upon or utilizes the principles involved in that field. State v. Medrano,
127 S.W.3d 781, 784-86 (Tex. Crim. App. 2004); Dennis v. State, 178 S.W.3d 172,
182 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). 

 The facts in a particular case upon which an expert bases an opinion or
inference may be those perceived by, reviewed by, or made known to the expert at or
before the hearing and such facts need not be admissible in evidence if they are of a
type reasonably relied upon by experts in the particular field in forming opinions on
the subject. Tex. R. Evid. 703.

B. Analysis

 Here, appellant proffered the testimony of Dr. Steve Rubenzer as an expert on
eyewitness identifications, and the trial court conducted a hearing outside the
presence of the jury. Dr. Rubenzer testified that he is a licensed psychologist and
board certified forensic psychologist. He has read many articles on the topic of
eyewitness identification, but he has not authored published articles or conducted
original studies in the area of eyewitness identification. Dr. Rubenzer has testified
as an expert on eyewitness identification one previous time. 

 In addition, Dr. Rubenzer testified that, in preparation for his testimony in the
instant case, he reviewed the photo array and the transcript of the pre-trial hearing on
the admissibility of the photo array, and he discussed a general outline of the case
with defense counsel. Dr. Rubenzer acknowledged that he had not reviewed anything
else, had not talked with, looked at, or visited with appellant, and had not talked with
the Abbotts, Officer Zientek, or any other witness in the case. (3) In addition, when
cross-examined by the State as to whether he felt there were things that he did not
know about the identification in this case, Dr. Rubenzer confirmed that "there are
many things I don't know about the identification, yes."

 Dr. Rubenzer testified that he could assist the trier of fact by testifying "in
terms of general principles of memory and recall and what psychologists have learned
about that process and how it can be affected and contaminated." In addition, Dr.
Rubenzer testified that he could "speak as to the great deal of research that's been
done in terms of how eyewitness identification procedures are performed." Further,
Dr. Rubenzer testified that he could "speak to issues such as what we know about
accuracy rates of photo spreads conducted in many different settings . . . [and] the
issues that can lead to false identification, some of which are not obvious to lay
people." Dr. Rubenzer testified that his testimony would affect "the weight that
people put to the photo spread identification and to an identification in court."

 At the conclusion of the hearing, the trial court ruled that Dr. Rubenzer's
testimony was inadmissible. The trial court found that Dr. Rubenzer was qualified
as an expert and that eyewitness memory could be a valid science under certain
conditions, but that Dr. Rubenzer's testimony was not relevant because he had no
actual knowledge as to what procedures were used by the police officers, what the
witnesses were told, what they saw or did not see, or how information was presented
to the witnesses. Therefore, he could not adequately tie the scientific principles on
misidentification to the specific facts of the case. (4) 

 By bill of exception, appellant presented that, had Dr. Rubenzer been permitted
to testify, he would have testified that "there is an area of expertise called false
identification"; that the demonstration of photo spreads carries various rates of
reliability; that photo spread procedures can be suggestive; that there may be
discrepancies between the procedures that the National Institute of Justice
recommends and what was done in this case; and that a subsequent in-court
identification "is always going to be tainted."

 In conducting a relevancy review under rule 702, we consider whether the
scientific principles "will assist the trier of fact" and are "sufficiently tied" to the
pertinent facts of the case. Jordan, 928 S.W.2d at 555. The inquiry is not whether
there are some facts that the expert failed to take into account, but whether the expert
took into account enough pertinent facts to be of assistance to the trier of fact. Id. at
556. As the reviewing court, we examine whether the expert made an adequate effort
to tie the pertinent facts of the case to the scientific principles about which he was to
testify. Morales v. State, 32 S.W.3d 862, 866 (Tex. Crim. App. 2000); Jordan, 928
S.W.2d at 555 (explaining that "this connection is not so much a matter of proof,
however, as a matter of application"). 

 Here, the record shows that the substance of Dr. Rubenzer's testimony was in
the form of general principles. "Generic testimony" and general studies are not
sufficient unless they are connected to the facts of the case. See Morales, 32 S.W.3d
at 866 (citing Williams v. State, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994)
(concluding that expert witness failed to connect generic testimony concerning
psychological profiles of offenders to facts of case) and Rousseau v. State, 855
S.W.2d 666, 686 (Tex. Crim. App. 1993) (concluding that testimony was not relevant
where expert only referred to "studies" and did not discuss whether any factors he
planned to testify to would apply to specific facts of case)). 

 Appellant did not, by his bill of exception, demonstrate that Dr. Rubenzer's
opinions related to any of the specific facts of this case, nor did appellant identify
factors that could assist the jury in this case, other than in the most general sense. See
Salazar v. State, 127 S.W.3d 355, 360 (Tex. App.--Houston [14th Dist.] 2004, pet.
ref'd). Dr. Rubenzer did not exhibit knowledge of the specific facts of this case or
tie the scientific principles on which he sought to testify to the facts of this case, other
than to postulate generally that it is preferable that separate photos be submitted to
witnesses for identification purposes, rather than an array form. See id. Dr.
Rubenzer's testimony was offered purely as educational material for the jury, which
is insufficient to demonstrate that the scientific principles "will assist the trier of fact"
in this case or are "sufficiently tied" to the pertinent facts of the case. Jordan, 928
S.W.2d at 555-56; Salazar, 127 S.W.3d at 360. 

 We conclude that the trial court's determination that appellant failed to show
by clear and convincing evidence that Dr. Rubenzer's testimony was relevant,
because he failed to tie pertinent facts of this case to the scientific principles about
which he planned to testify, as required, lies within the zone of reasonable
disagreement. See Weatherred, 15 S.W.3d at 542; Jordan, 928 S.W.2d at 555-56. 
We hold that the trial court did not abuse its discretion in excluding Dr. Rubenzer's
testimony.

 Accordingly, appellant's first issue is overruled.

Prior Inconsistent Statements 

 In his second and third issues, appellant contends that the trial court erred by
precluding him from impeaching certain witnesses with prior inconsistent statements.
Appellant contends that the trial court improperly sustained the State's hearsay
objections to each line of questioning. 

A. Standard of Review and Principles of Law

 We review the trial court's exclusion of testimony under an abuse of discretion
standard. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). We will
uphold the trial court's decision unless it lies outside the "zone of reasonable
disagreement." Id. 

 Hearsay is a statement, other than one made by the declarant while testifying
at trial, that is offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d).
Hearsay statements are inadmissible except as provided by statute or other rule. Tex.
R. Evid. 802. When a prior statement is not offered as primary evidence, but to
impeach the witness's credibility, it is not hearsay. Flores v. State, 48 S.W.3d 397,
404 (Tex. App.--Waco 2001, pet. ref'd).

 Rule 613 provides that a witness may be examined "concerning a prior
inconsistent statement made by the witness, whether oral or written, and before
further cross-examination concerning, or extrinsic evidence of, such statement may
be allowed." Tex. R. Evid. 613(a). As a predicate, the witness must be told the
contents of the statement, the person to whom it was made, and the time and place it
was made. Id. The witness must be given an opportunity to explain or deny the
statement. Id. If the witness unequivocally admits to having made the prior
statement, extrinsic evidence will not be admitted. Id.

 Improper limitation of cross-examination violates the confrontation clauses of
both the state and federal constitutions, and is subject to a constitutional harmless
error analysis. U.S. Const. amend. VI; Tex. Const. art. 1, § 10; Tex. R. App. P.
44.2(a); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Because a
violation of the right to cross-examination under the Confrontation Clause necessarily
means that the testimony was not permitted before the fact finder, we apply a three-pronged test in our review of the exclusion of such evidence. Shelby v. State, 819
S.W.2d 544, 547 (Tex. Crim. App. 1991); Smith v. State, No. 01-05-00819-CR, 2007
WL 852344, at *8 (Tex. App.--Houston [1st Dist.] Mar. 22, 2007, no pet. h.)
(designated for publication). First, a reviewing court must assume that the damaging
potential of the cross-examination was fully realized. Shelby, 819 S.W.2d at 547
(citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986));
Smith, 2007 WL 852344, at *8. Second, with that assumption in mind, we analyze
the error in connection with the following factors: (1) the importance of the witness'
testimony to the prosecution's case; (2) whether the testimony was cumulative; (3)
the presence or absence of evidence corroborating or contradicting the witness'
testimony on material points; (4) the extent of cross-examination otherwise permitted;
and (5) the overall strength of the prosecution's case. Shelby, 819 S.W.2d at 547
(citing Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438); Smith, 2007 WL 852344,
at *8. Finally, keeping the first two prongs in mind, we determine whether the error
was harmless beyond a reasonable doubt. Tex. R. App. P. 44.2(a); Shelby, 819 S.W.2d
at 547; Smith, 2007 WL 852344, at *8.

B. Analysis

 1. Mrs. Baldree 

 In his second issue, appellant contends that he was precluded from impeaching
Officer Zientek with a prior inconsistent statement. During defense counsel's cross-examination of Officer Zientek, Officer Zientek denied that, when he visited with
appellant's wife, Dianne Baldree, at her home on March 13, 2005, he told Mrs.
Baldree that the suspect was a Hispanic male.


 Subsequently, defense counsel unsuccessfully attempted to question Mrs.
Baldree as to whether Officer Zientek had told her that he was looking for a Hispanic
male, as follows: 


 [Defense]: And did [Detective Zientek] tell you [Mrs. Baldree] that he
was looking for a Hispanic male?

 [State]: Objection, hearsay.

 The Court: Sustained.

 [Defense]: Your Honor, these questions have been previously asked to
Zientek and gotten a negative response. 

 After having the jury removed, the trial court explained its ruling based on the
court's belief that the defense counsel's questions constituted improper impeachment
and, thus, elicited hearsay evidence. Appellant contends that the trial court erred by
sustaining the State's objection and that such error impinged on his constitutional
right to confront Officer Zientek. 

 Appellant made an offer of proof as follows:

 [Defense]: Had Mrs. Baldree been allowed to answer, she would have
answered that Officer Zientek said that the suspect was a
Hispanic male.

 The Court: All right.

 [Defense]: That's it.


 The record shows that defense counsel laid the proper predicate for the use of
Mrs. Baldree's testimony to impeach Officer Zientek. Officer Zientek was told the
contents of the statement at issue (that the suspect sought was a Hispanic male), the
person to whom it was made (Mrs. Baldree), and the time and place it was made (on
March 13, 2005 at Mrs. Baldree's home). See Tex. R. Evid. 613(a). Officer Zientek
did not unequivocally admit having made the prior statement; thus, extrinsic evidence
of his statement was admissible. See id. It was error for the trial court to exclude
Mrs. Baldree's testimony on this point. 


 Having determined that error occurred, the next step is to assess whether harm
resulted. The harmless error analysis presupposes that the testimony at issue was not
permitted to be presented to the fact finder. See Shelby, 819 S.W.2d at 547; Smith,
2007 WL 852344, at *8. Here, however, the excluded testimony was later placed
before the fact finder. The record shows that, although Mrs. Baldree's statement was
initially excluded, the statement at issue came in when Mrs. Baldree later testified
before the jury as follows:

 [State]: When [Detective Zientek] came to your home and
you showed him the caller ID, why did you show
him that?

 [Mrs. Baldree]: Because he had asked me--he told me that he was
looking for who might possibly have been driving
my husband's truck. That he was not a suspect and
they were--

 [State]: No. But why did you show him--

 [Mrs. Baldree]: --looking for a Hispanic male.

 We hold that the trial court's error in initially excluding Mrs. Baldree's
testimony on this point was rendered harmless because the same statement was later
presented to the jury. See Mosley v. State, 983 S.W.2d 249, 258 (Tex. Crim. App.
1998) (finding, in context of constitutional error, that exclusion of testimony did not
contribute to conviction or punishment when same testimony was later admitted). 
Therefore, the trial court's initial exclusion of the statement was harmless.

 Accordingly, appellant's second issue is overruled.

 2. Mr. Abbott

 In his third issue, appellant contends that he was precluded from introducing
a prior inconsistent statement by Mr. Abbott concerning his description to the police
of appellant's truck. Appellant contends that the trial court improperly sustained a
hearsay objection by the State. Specifically, appellant complains of the following
colloquy that took place during defense counsel's cross-examination of Mr. Abbott:

 [Defense]: Do you [Mr. Abbott] also see from Defendant's Exhibit
No. 3 a series of metal or plastic racks on the roof of the
car [sic]?

 [Abbott]: Yes, I do.

 [Defense]: You did not describe those to Officer Ferrell, did you,
either?

 [State]: Objection, hearsay. He's asking for an out of court
statement being offered for the truth of the matter stated,
Judge.

 The Court: That's sustained.

 [Defense]: Was that included in your description?

 [Abbott]: It was not.

 [Defense]: Okay.

 [State]: Judge, I'd like the jury to disregard. That was the same
exact question.

 The Court: Okay. Ask the questions in the affirmative.




Appellant contends that Mr. Abbott's testimony did not constitute hearsay because
it was not offered for the truth of the matter asserted but constituted an attempt to
impeach Mr. Abbott with a prior inconsistent statement.

 To qualify for admission as a prior inconsistent statement, appellant must
demonstrate that "the statements are indeed inconsistent." Lopez v. State, 86 S.W.3d
228, 230 (Tex. Crim. App. 2002). Mr. Abbott testified at trial that he did not include
roof racks in his description of appellant's truck when he described the truck to the
police at the time of the incident. Appellant failed to demonstrate any inconsistency
between Mr. Abbott's prior statement to the police and his testimony at trial. 

 Accordingly, appellant's third issue is overruled.

Pre-trial Hearing

 In his fourth issue, appellant contends that the trial court erred by sustaining
the State's hearsay objections during the pretrial hearing because the Texas Rules of
Evidence are inapplicable during a pre-trial hearing.

 Rule 104(a) provides, in pertinent part, as follows:

 Preliminary questions concerning the qualification of a person to be a
witness, the existence of a privilege, or the admissibility of evidence
shall be determined by the court. . . . In making its determination the
court is not bound by the rules of evidence except those with respect to
privileges.



Tex. R. Evid. 104(a). Hence, the power to disregard the rules exists, but nothing in
the language of the rule compels the trial to exercise that power. The trial court "must
be given wide latitude in its decision to admit or exclude evidence." Harris v. State,
152 S.W.3d 786, 793 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd). 

 Here, appellant has not shown that an application of the rules of evidence
during the pre-trial hearing in this case constituted an abuse of discretion.

 Accordingly, appellant's fourth issue is overruled. (5)

Conclusion We affirm the judgment of the trial court.

 

 

 Laura Carter Higley

 Justice

 

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Publish. Tex. R. App. P. 47.2(b).
1. [1] See Tex. Pen. Code Ann. § 30.02(a) (Vernon Supp. 2006). 
2. 2 "Hard sciences" are those based on scientific methods which are susceptible to rigid
scientific testing, such as chemistry; "soft sciences" include non-scientific disciplines
that rely principally upon technical or specialized knowledge, skill, or experience,
such as psychology. See Weatherred v. State, 15 S.W.3d 540, 542 n.5 (Tex. Crim.
App. 2000). 
3. [3] We recognize that Texas Rule of Evidence 703 permits an expert to base his opinion
testimony on facts or data made known to him during trial. See Tex. R. Evid. 703.
Hence, we do not conclude that Dr. Rubenzer's testimony is lacking because he failed
to interview witnesses. See Jordan v. State, 928 S.W.2d 550, 556 n.8 (Tex. Crim.
App. 1996).
4. [4] Because it is not necessary to our disposition, we do not address whether eyewitness
identification is a valid science under certain conditions. See Tex. R. App. P. 47.1.
5. [5] Appellant has not argued on appeal that the trial court abused its discretion by
substantively excluding the proffered evidence.